## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

RICHARD A. GORMAN,

     Plaintiff,

  -against-

ILYA SHPETRIK,

     Defendant.

Civil Action No. 2:20-cv-04759-JCJ

## MEMORANDUM OF LAW IN SUPPORT OF
## OP DEFENDANT'S MOTION TO DISMISS

**PRESS KORAL LLP**
641 Lexington Avenue, 13th Floor
New York, NY 10022
Telephone: (212) 922-1111
Facsimile: (347) 342-3882
mpress@presskoral.com

{00989103.v1 }

## <u>TABLE OF CONTENTS</u>

<u>Page</u>:

I.    Introduction...........................................................................................................1

II.    Statement of Facts..............................................................................................2

    A.    Gorman is Convicted of Raping Two Women in College and Serves Five Years in Prison ...........................................................................................................2

    B.    Gorman Builds Brand.com ...........................................................................3

    C.    The Performoutsider Web Post.....................................................................3

    D.    The AnonNews Website .................................................................................7

    E.    The Domain Registration of www.performoutsider.com ...........................8

    F.    The Alleged "Rick Rollinski" Emails.........................................................8

    G.    The @performoutsider Twitter Account.....................................................9

    H.    Alleged Threatening Emails to Gorman's Customers ...........................9

    I.    Gorman Sues Performoutsider, John Monarch and Karl Steinborn in Pennsylvania in 2014 ........................................................................................10

    J.    Gorman Sues Monarch in South Carolina in 2014 .................................11

    K.    Gorman's Untimely and Meritless Complaint in the Present Action ...................12

III.    Argument...........................................................................................................12

    A.    The Action Should Be Dismissed On Grounds of Lack of Personal Jurisdiction Over Illya Under Rule 12(b)(2) ...................................................................12

    B.    The Action Should Be Dismissed as Untimely on Grounds That it Was Brought Long After the One-Year Limitations Period of Gorman's Claims .....................16

    C.    The Complaint Should Be Dismissed on Grounds that it Fails to State Any Claim for Which Relief May be Granted ........................................................................19

        1.    The Complaint Fails to State a Claim for Defamation .............................20

        2.    The Complaint Fails to State a Claim for False Light .............................23

        3.    The Complaint Fails to State a Claim for Intentional Infliction of Emotional Distress ........................................................................................24

4.    The Complaint Fails to State a Claim for Civil Conspiracy ......................25

Conclusion ...........................................................................................................................26

Defendant Illya Shpetrik ("Illya" or "Defendant"), submits this memorandum of law in support of his motion to dismiss the Complaint of Plaintiff Richard A. Gorman ("Gorman" or "Plaintiff").[1]

## I.   INTRODUCTION

The plaintiff in this action, Richard A. Gorman, is a serial litigator—as well as a convicted rapist and registered sex offender—who spent five years in prison for raping women while a college student at Florida State University. After completing his sentence, Gorman founded Brand.com, a company expert in online reputation management—as well as reputation destruction. Applying a well-worn playbook developed at Brand.com, Gorman pursues frivolous litigation against his perceived enemies, often seeking to inflict collateral damage to achieve his goals.

For nearly a decade, Gorman has pursued litigation against a South Carolina-based businessman, John Monarch, and one or more of Monarch's companies. As part of his strategy in the Monarch litigation, Gorman recently brought the present action against Illya, a Canadian citizen who long ago was disclosed as the registrant of a truthful website published over seven years ago, on July 29, 2013. In a misguided attempt to pressure Illya, Gorman initially also sued Illya's parents and brother, although his Complaint does not articulate any role they allegedly played in the Action. After being threatened with a motion for sanctions, Gorman voluntarily dropped his claims against Illya's parents and brother.

As demonstrated below, Gorman's Complaint is deeply flawed in many respects and should now be dismissed as against Illya as well. First, the complaint fails to state facts establishing that the court has personal jurisdiction over Illya, because it alleges only that Illya operated a passive website in Canada, which under the jurisprudence of this Court did not purposefully direct

---

[1] A copy of Gorman's Complaint in this matter ("Compl."), along with Exhibits 1-12 thereto, is attached to the accompanying Declaration of Matthew J. Press ("Press Dec."), as Exhibit 1.

any conduct into Pennsylvania. Second, as is apparent on the face of the Complaint, Gorman's claims—dating back to 2013—are untimely under the one-year statute of limitations for Gorman's claims of defamation and related torts. Finally, the Complaint fails to state any claim against Illya on the merits because the only actual allegation against him is that he posted truthful statements concerning Gorman's history as a rapist and sex offender. The only statement allegedly by Illya from of which Gorman complains is a direct quote from the prosecutor in one of Gorman's rape cases. Gorman speciously asserts that Illya should be liable for linking to statements made by other people on other websites. But this contention is contrary to Pennsylvania law, which provides that merely linking to another website does not make a person responsible for content posted on it by others.

Gorman's remaining claims of false light, intentional infliction of emotional distress and civil conspiracy are similarly flawed and fail to state any valid claim. Accordingly, the Court should afford Illya the repose to which he is entitled, protect him from Gorman's overbearing pressure tactics and dismiss the Complaint with prejudice.

## II.   STATEMENT OF FACTS

The following facts are set forth in the Complaint and/or exhibits.

### A.   Gorman is Convicted of Raping Women in College and Serves Five Years in Prison

In 2003, Gorman, then a student at Florida State University, was charged with raping two female students within the space of five months. *See* Compl., Exh. 1 at 1. A jury found Gorman guilty of raping the first victim, who blacked out after consuming too much alcohol with Gorman. *See id.* at 1-2. Gorman served five years in prison and became a registered sex offender. *See id.*

**B.      Gorman Builds Brand.com**

After prison, Gorman moved to Pennsylvania and built several successful businesses—including Reputation Changer, Brand.com, directresponse.net and At Cost Fulfillment. *See id.* Among these, "brand.com" and "Reputation Changer" sought to monitor and improve the image of individuals and businesses as they were described on the Internet. *See* Compl., Exh. 11.

**C.      The Performoutsider Web Post**

As alleged in the Complaint, on July 29, 2013, a website located at www.performoutsider.com (the "Performoutsider Website") published a post (the "Performoutsider Post") titled "Richard Gorman aka directresponse.net Criminal Past," which aggregated certain statements by others about Gorman. *See* Compl. ¶ 11 & Exh. 1. Gorman's copy of the Performoutsider Post is from the "Wayback Machine" of the Internet Archive, because the actual post was taken down from the Internet in 2014. *See id.* While Gorman alleges that the Performoutsider Post "falsely stated that Gorman had sexually assaulted a minor," Compl. ¶ 12, the text of the post itself—incorporated into the Complaint as Exhibit 1—belies that characterization.

The Performoutsider Post states that "Richard Gorman owns a bunch of companies – directresponse.net, at cost fulfillment, brand.com etc and is pretty well known in the IM community. However when you look at his criminal past you get this[.]" *Id.* What follows is a link to the Megan's Law sex offender registry, accurately indicating that Richard Andrew Gorman is a registered Florida sex offender. *See id*. The Performoutsider Post also quotes a portion of Florida Stat. 794.011(5), a statute involving "Sexual Battery; Victim 12 Or Older And In Process Uses Physical Force Not Likely To Cause Serious Personal Injury." *Id.*

Quoting an evident news source,[2] the Performoutsider Post continues, "here's some of the alleged stories of what allegedly happened:

> Richard Gorman Jr. was no ordinary Florida State University undergraduate in 2003, the year he was arrested. He was flashy. He had money. He had co-founded an online nutritional-supplements company in Altamonte Springs.
>
> On Jan. 15, 2003, a female student woke up in his Tallahassee apartment, not knowing how she got there. The night before she had been playing pool at a bar with Gorman and some of his fraternity brothers and blacked out, she would later tell authorities.
>
> "I felt like I had been ... raped," she would testify later. There was blood, she said, and she was sore. She could not, however, swear that she had been assaulted.
>
> Five months later, on June 21, 2003, another female student was found sobbing and screaming not far from Gorman's apartment.
>
> Gorman had taken her home after a night of dancing and raped her, she told authorities. He was arrested a few hours later.
>
> He went to trial in February 2005, charged with raping the woman who was found crying. Smith was the prosecutor. Jurors could not reach a verdict, however, and a judge declared a mistrial. A few weeks later. Smith charged Gorman with rape in the earlier incident involving the woman who had blacked out.
>
> On June 6, 2005, Smith put Gorman back on trial in the case that had ended without a verdict. Again, Gorman said he was innocent. This time, however, the jury found him guilty.
>
> Before Gorman was sentenced, both sides negotiated a deal: Gorman would get five years in prison for the rape of which he had been found guilty. He also pleaded no contest to a lesser charge - misdemeanor battery - and got 30 days in the case of the woman who had passed out.
>
> Gorman went to trial twice in Tallahassee. The first, in February 2005, ended with a hung jury. The second, in June 2005, went so badly for the prosecution that Chastity's lawyers offered Gorman a plea bargain the night before the verdict: 12 months probation, no

---

[2] The quoted text comes from an article by Rene Stutzman dated March 1, 2009, in the Orlando Sentinel. *See* https://www.orlandosentinel.com/news/os-xpm-2009-03-01-flabar01-story.html.

prison.

But Gorman, his parents and attorneys were so convinced of a not-guilty verdict that they passed on the plea bargain. When the jury issued a guilty verdict, the judge ordered lawyers for both sides to come up with a new plea agreement less than the mandatory 8.9 years.

To his great regret. Gorman signed off on the agreement, which also included waivers prohibiting his seeking any post-conviction relief, including raising claims of ineffective counsel.

Thus, until Gorman is 37 years old, he will be on probation, possibly under curfew, and will have to live under sex offender restrictions until he's at least 47.

Quoting another evident news source,[3] which contains the only reference on the Performoutsider Site to any person being "underage," the Performoutsider Post continues, "William N. Meggs Florida State Attorney, the prosecuting attorney said of Rich Gorman:

One of the most important functions of the Office of the State Attorney is to stand up for the victims of crime. It is in that vein that I must respond to a recent commentary by Kathleen Parker regarding the rape conviction of Rich Gorman ("Brief encounter ruined a young man's life, " May 4). Parker is the latest victim of Gorman's public-relations campaign, which employs the age-old defense tactic of blaming the victim. She talks about a 30-pound box of court documents that she apparently failed to review, and not once has she called this office for information. Had Parker done so, she would have found that the "regular college Joe" she describes actually ran an escort service and had a thriving computer business. ***Had Parker done her homework, she would have found that Gorman invited the underage victim to go out in a limousine with four other girls and provided plenty of booze.***

He also stopped to pick up a *** and proceeded to a local bar. It was there that the victim became ill and asked to be taken home. Gorman volunteered to take her home but bypassed her dorm and took her to his house. Charged with rape - his second charge in a matter of months - Gorman's "first" story was that nothing happened.

---

[3] The link in Exhibit 1 traces back to an original post on the website of the Tallahassee Democrat, apparently dated May 12, 2006, which no longer is available on the internet. *See* http://www.tdo.com/apps/pbcs.dll/article?AID=/20060512/OPINION02/605120316/1022.

> When positive DNA results were returned, his firm denials changed to "it was consensual." Gorman has been successful in convincing a jury of one - Kathleen Parker - of his innocence. He was less successful with a six-person jury, which delivered a unanimous guilty verdict. Thankfully, the jurors considered all the evidence, not just one side.
>
> WILLIAM N. MEGGS Florida State Attorney

Compl., Exh. 1 (emphasis added). The remaining content of the Performoutsider Post includes similar content apparently copied from "Local 6 News"[4] and the results of an apparent Florida public records search on Gorman. *See id.*

Except for the factually accurate introduction, that Gorman has a "criminal past," and a few transitional sentences, the entire content of the Performoutsider Post, on its face, plainly is a compilation of material quoted from collection of third-party sources. *See id.*

Nowhere in the content of the Performoutsider Post is it "stated," as Gorman alleges, that "Gorman had sexually assaulted a minor." Compl. ¶ 12. Gorman appears to be referring to the statement attributed to Gorman's prosecutor, William Meggs, that "Gorman invited the ***underage victim*** to go out in a limousine with four other girls and provided plenty of booze." Compl., Exh. 1 (emphasis added). But, in context, Mr. Meggs' reference to Gorman's victim being "underage" plainly refers to the victim being under the ***legal drinking age of twenty-one***, rather than being a "minor." As the previously quoted text of the Performoutsider Post (copied from the Orlando Sentinel) states, Gorman's rape victim was another college student at Florida State University, who necessarily would be over eighteen years of age, but evidently was not yet twenty-one—and, thus, was "underage" for the consumption of "booze." *See id.*

---

[4]   *See* Exh. 1. Following the links on Exhibit 1, such content is found on http://www.local6.com/news/4442195/detail.html.

### D.       The AnonNews Website

As alleged in the Complaint, included on the Performoutsider Post was a "link" to an article on "a website located at http://anonnews.org/forum/post/8233 (the "AnonNews Website")". Compl. ¶ 13. The AnonNews Website is a publication of the collective of computer hackers known as "Anonymous." *See* Compl., Exh. 2; https://en.wikipedia.org/wiki/Anonymous_(hacker_group). As stated on at the top of the AnonNews Website "AnonNews is an independent and uncensored (but moderated) news platform for Anonymous. Anyone is welcome to post a submission, and can do so by clicking the 'Add' button for a category." Compl., Exh. 2.

Gorman does not allege that Illya is the author of any of the content of the AnonNews Website. *See id.* Gorman states only that the Performoutsider Post "incorporated [the AnonNews Website] by reference." *Id.* In other words, Gorman alleges that by merely linking to the AnonNews Website, Illya, as the alleged author of the Performoutsider Website, is responsible for the past and future content of the AnonNews Website, which is attached as Exhibit 2 to the Complaint.

The AnonNews Website reflects that many individuals posted comments concerning Gorman, including Esteban Yaniz, who posted an apology for making prior comments under the name "Barry the Wong" and "Barnabas David Wong," apparently by order of a court in another defamation action brought by Gorman against Yaniz and Keisha Ruff in the Chester County Court of Common Pleas, Docket No. 2011-11238. *See* Compl., Exh. 2 at 4-5.

More than half of the posts on the AnonNews Website were posted *after* the Performoutsider Post—which was posted on July 29, 2013. *See id.* at 6-12. Thus, Gorman seeks to hold Illya—as the alleged author of the Performoutsider Post—liable for content on the

AnonNews Website which did not even exist at the time of the Performoutsider Post.[5]

### E.      The Domain Registration of www.performoutsider.com

As alleged in the Complaint, the domain name www.performoutsider.com was registered to an "Illya Syanov," with an address at 43 Billington Crescent, Toronto, ON, Canada M3A 2G8. *See* Compl. ¶ 16 & Exh. 3. Whois search results, generated by Gorman on May 14, 2014, indicate that the domain was first created on September 5, 2012 and last updated on September 6, 2013. *See id.* The Complaint alleges that the registered mailing address of the www.performousider.com domain was false. *See id.* However, the domain registration also includes a telephone number and email address, jasonstateham@gmail.com. *See* Compl., Exh. 3. Gorman does not state whether he tried the telephone number or email address and whether they also were false. *See id.*

### F.      The Alleged "Rick Rollinski" Emails

On December 10, 2013, Gorman claims he "received an email from a person/persons using the name "Rick Rollinski," who threatened to send emails with Gorman's registered sex offender links to a broad range of individuals and companies "on a regular basis," and to "leak a full list of all of your clients and the methods you use to protect them to the media via direct mail to journalists around the world," unless Gorman paid a ransom of $500,000 in bitcoin. *See* Compl. ¶ 21 & Exh. 5. The December 10 email stated that "this won't be some amateur posting 1 post on some website." *Id.*

Gorman alleges that Rollinski followed up with similar emails on December 12 and 13. *See id.* ¶¶ 23-24 & Exhs. 6 & 7. Gorman does not allege that he received any further email from Rollinski. *See id.* Because he has no good faith basis upon which to do so, Gorman does not allege

---

[5] A prior lawsuit brought by Gorman states that the AnonNews Website was "removed sometime subsequent to October 6, 2013." Compl., Exh. 8 ¶ 20.

that Illya is in any way behind the Rollinski emails. *See id.* [6]

### G.     The @performoutsider Twitter Account

Gorman alleges that in December 2013 a Twitter account operating under the name @performoutsider (the "@performoutsider Twitter Account") "began publishing defamatory statements about Gorman to Gorman's employees, clients, and vendors." Compl. ¶ 26. The Complaint identifies just one tweet, made on December 19, 2013, which allegedly stated "[h]ow does it feel working for person who was convicted of sexual assault on a minor?" Compl. ¶ 27. The Complaint states that another tweet called Gorman a "child molester," but does not identify the date or the circumstances of the tweet. *See* Compl. ¶ 28. Gorman does not attach either of these alleged communications to the Complaint.

Because he has no good faith basis upon which to do so, Gorman does not allege that Illya is in any way behind the @performoutsider Twitter account. *See id.*

### H.     Alleged Threatening Emails to Gorman's Customers

The Complaint further alleges that "Gorman's customers began also began receiving threatening emails," which "stated that the customers would be exposed for working with Gorman's company, and attacked unless they paid a bitcoin ransom." *See* Compl. ¶¶ 30-31. The Complaint does not attach or identify the time, place, manner or content of any of the alleged emails. Because he has no good faith basis upon which to do so, Gorman does not allege that Illya is in any way behind these alleged threatening emails. *See id.*

---

[6] Perhaps not coincidentally, email spoofing is part of Gorman's own playbook. As reported by Local 6 News, during his rape trial, anonymous emails publicly identifying and smearing one of his rape victims—later traced back to his company's computers—were circulated to intimidate Gorman's victim. *See* Compl., Exh. 1 at 5. According to the report, county prosecutors charged Gorman with witness tampering, but later dropped the charges solely on jurisdictional grounds. *See id.*

I.      **Gorman Sues Performoutsider, John Monarch and Karl Steinborn in Pennsylvania in 2014**

On January 24, 2014, Gorman brought an action in Pennsylvania state court against the Performoutsider Website and certain John Does associated with the site, as well as John C. Monarch ("Monarch") and Karl F. Steinborn ("Steinborn")—two alleged business competitors of Gorman based in South Carolina—for alleged defamation arising from the Performoutsider Post (the "Monarch Action"). *See* Compl. ¶ 32 & Exh. 8. The complaint in the Monarch Action alleges that Monarch and Steinborn were the first, third and fourth followers of the @performoutsider Twitter account. *See id.* ¶¶ 27-29. Although it asserts the same claims now alleged in the Complaint against Illya, the complaint in the Monarch Action does not mention alleged emails from Rick Rollinski or draw any connection between the alleged defamation and an alleged Bitcoin blackmail scam. *See id.* The Monarch Action was removed to the United States District Court for the Eastern District of Pennsylvania. *See id.* ¶ 34.

Gorman states that, in the Monarch Action, he attempted to serve Illya at the physical address listed in the domain registry of performoutsider.com, which proved to be incorrect. The complaint in the Monarch Action states that the registered email address of the Performoutsider Website was jasonstateham@gmail.com¸ but does not state whether Gorman made any effort to contact the user of that email address. *See id.* ¶ 12. Similarly, neither the Complaint in this action, nor any of the exhibits, state whether Gorman sought leave to serve the registered email address, or made any effort to contact the phone number associated with the account. *See* Compl., Exh. 10.

Nevertheless, Gorman alleges in the Complaint that "[d]espite all efforts, the identity of the person/persons that owned and operated the <performoutsider.com> website could not be identified." Compl. ¶ 35. "Gorman thus filed a Motion with the Court to permit alternative service on 'Ilya Syanov.' [Gorman v. Monarch, No. 14-cv-00980 (E.D. Pa), ECF No. 18]." *Id.* ¶ 37.

However, the Court denied Gorman's Motion, and dismissed the <performoutsider.com> website from the action. *See id.* ¶ 42 & Exh. 10. Gorman does not identify any other efforts he took to identify and pursue Illya thereafter. For his part, Monarch challenged the Court's exercise of personal jurisdiction over him, and Gorman voluntarily dismissed the action as against Monarch. *See id.* ¶ 43. Steinborn, however, defaulted and the Court entered a default judgment against him finding that Steinborn was responsible for the Performoutsider Post. *See id.* ¶¶ 44-45.

### J.     Gorman Sues Monarch in South Carolina in 2014

After voluntarily dismissing his claims against Monarch in Pennsylvania, in August 2014, Gorman brought action against Monarch in his home state of South Carolina (the "SC Monarch Actoin"). *See* Compl. ¶ 46. Although the SC Monarch Action has continued for nearly seven years, Gorman implausibly alleges that he only learned for the first time that Illya was a real person— rather than an alter-ego of Monarch—and obtained an address associated with Illya (in fact, the address of Illya's parents), in supplemental interrogatory responses by filed by Monarch in the SC Monarch Action on July 30, 2020. *See* Compl. ¶¶ 48-51 & Exh. 12. Gorman does not articulate why he did not previously obtain information concerning the identity and location of Illya in the more than seven-year history of the dispute.

However, the record of the SC Monarch Action indicates that Gorman's purportedly recent epiphany is a sham. Prior interrogatory responses by Monarch in the Monarch Action, dated May 1, 2014, make clear that Illya is a real person and state that Monarch believes Illya to live in Toronto, Canada. *See* Press Dec., Exh. 2, Responses to Interrogatories Nos. 1 & 4. In 2014, Gorman received from Monarch in discovery a printout of a Facebook chat between Monarch and "Illya Blt," which indicated that they were separate people and afforded Gorman another means by which to contact, and potentially serve, Illya—by Facebook message. *See* Press Dec., Exh. 3. However, Gorman irrationally decided that Illya was merely an alter-ego of Monarch and did not

continue to pursue his alleged claims against Illya after 2014. *See* Press Dec., Exh. 4.

### K.     Gorman's Untimely and Meritless Complaint in the Present Action

In the Complaint, alleges purported causes of action against Illya, his parents Mark and Anna, and his brother, Oleg, for defamation, false light, intentional infliction of emotional distress and civil conspiracy. *See* Compl. ¶¶ 2-5. However, upon being advised that Mark, Anna and Oleg intended to move for sanctions under Rule 11—on grounds of the lack of any non-conclusory allegations in the Complaint connecting them with the alleged misconduct—Gorman voluntarily discontinued his claims against them, *see* Doc. No. 7, leaving Illya as the sole remaining defendant in the action.

## III.   ARGUMENT

As set forth below, the Complaint should be dismissed on three independent grounds: (1) because the Court lacks personal jurisdiction over Illya, who is alleged only to have posted statements on a passive website in Canada; (2) on grounds that the Complaint is untimely under the applicable one-year limitations period for Gorman's claims; and (3) on grounds that each of the alleged causes of action fails to state a claim for which relief may be granted.

### A.     The Action Should Be Dismissed On Grounds of Lack of Personal Jurisdiction Over Illya Under Rule 12(b)(2)

The Complaint first should be dismissed under Rule 12(b)(2), because it fails to allege facts establishing that the Court has personal jurisdiction over Illya.

A motion to dismiss for lack of personal jurisdiction "is inherently a matter which requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n. 9 (3d Cir.1984). "When a defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper." *Ciolli v. Iravani*, 651 F. Supp. 2d 356, 361–62 (E.D. Pa. 2009)

(quoting *Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992)). To meet this burden, the plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987). Such alleged contacts must be within the limitations period of the asserted claims. *See Ciolli*, 651 F. Supp. 2d at 369 (finding alleged defamatory statements prior to limitations period could not be used to establish personal jurisdiction).

Under the traditional *Calder* effects test, the plaintiff must establish that: (1) the defendant has done "some act or consummate[d] some transaction with the forum or perform[ed] some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;" (2) the plaintiff's "claim must be one which arises out of or results from the defendant's forum-related activities;" and (3) the "exercise of jurisdiction must be reasonable." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 260 (3d Cir.2008).[7]

In the specific context of whether a non-resident's internet activities support the exercise of personal jurisdiction, this Court uses a sliding scale to assess whether the Internet activity in question was expressly aimed at the forum state by examining both the features of the web site and how the defendant used those features. *See, e.g., Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452–453 (3d Cir.2003) (citing *Zippo Mfg. Co. v. Zippo Dot Com., Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997)); *Gorman v. Jacobs*, 597 F. Supp. 2d 541, 547 (E.D. Pa. 2009) (finding comments

---

[7] Under the traditional test, to determine whether the exercise of jurisdiction is reasonable, the court may consider a variety of factors including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted).

on website were insufficient contacts with forum state to support exercise of personal jurisdiction over defendants). At one end of the scale are commercial interactive web sites that "involve the knowing and repeated transmission of computer files over the Internet," and through which individuals actively engage in business with residents of a foreign jurisdiction. *See Gorman*, 597 F. Supp. 2d at 547–48. Exercise of personal jurisdiction over individuals actively engaged in such Internet activity typically is proper. *See Toys "R" Us*, 318 F.3d at 452. At the other end of the scale are passive web sites where information is posted and users can only view it. *See Zippo*, 952 F.Supp. at 1124. Activities related to such web sites do not have sufficient contacts with the forum to warrant the exercise of personal jurisdiction. *See Gorman*, 597 F. Supp. 2d at 547–48.

Because one can access web sites from anywhere, to justify the exercise of personal jurisdiction, the defendant's Internet activity must evince an intent to interact with the forum.[8] The "mere posting of information or advertisements on an Internet website does not confer nationwide personal jurisdiction." *Remick v. Manfredy*, 238 F.3d 248, 259 n. 3 (3d Cir.2001). Something about the web site must suggest to the user that residents of the forum state are the target audience. *See Gorman*, 597 F. Supp. 2d at 548.

> Simply (a) knowing that the plaintiff is in the forum state, (b) posting negative statements about the plaintiff's forum-related activities, and (c) referring to the forum in one's writing **will not suffice to satisfy the Calder effects test.**

*Id.* (emphasis added); *see IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 261 (3d Cir.1998) (citing *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). Thus, in *Gorman*, the court found that defendants located in other states posting negative comments about the plaintiff

---

[8] *See Toys "R" Us*, 318 F.3d at 452 (exercise of personal jurisdiction appropriate if "the defendant intentionally interact[ed] with the forum state via the web site"); *see also Young*, 315 F.3d at 262–63 ("application of Calder in the Internet context requires proof that the out-of-state defendant's Internet activity is expressly targeted at or directed to the forum state").

on a passive website did not submit to personal jurisdiction in the plaintiff's home state of Pennsylvania, even though the defendants knew that the plaintiff was located there. *See Gorman*, 597 F. Supp. 2d at 548; *see also Ciolli*, 651 F.Supp.2d at 368.

Gorman pleads that Illya is a citizen of Canada living in Ontario, Canada. *See* Compl. ¶ 2. The only conduct by Illya identified anywhere in the Complaint is the posting the Performoutsider Post, which occurred on July 29, 2013. *See* Compl. ¶¶ 11-15. This alleged conduct—which, according to the Complaint, occurred over ***seven years*** before this action was filed—is long before the one-year limitations period of Gorman's claims. *See infra* at III.B. Thus, it does not count for purposes of establishing personal jurisdiction over Illya. *See Ciolli*, 651 F. Supp. 2d at 369. All of the remaining conduct alleged in the Complaint, whether or not tied to Illya,[9] likewise precedes the limitations period and provides no basis for personal jurisdiction. *See id.*

In any case, the Complaint alleges no more than that www.performoutsider.com was a purely ***passive*** website. The Complaint does not identify any features of www.performoutsider.com which engaged interactively with residents of Pennsylvania. Nor does the Complaint allege that www.performoutsider.com in any way targeted a readership specifically in Pennsylvania. *See Gorman*, 597 F. Supp. 2d at 548. This action thus is indistinguishable from *Gorman*, in which this Court found the mere fact that the plaintiff lived in Pennsylvania was not sufficient to establish personal jurisdiction over the defendant doctors—who were addressing a

---

[9] Gorman insinuates, without actually alleging, that Illya had a hand in the Rick Rollinski emails and may have sent allegedly defamatory messages from the @performoutsider Twitter account. This pure speculation is contradicted by Rollinski's statement that he or she was not "some amateur posting 1 post on some website." Exh. 5. There is no basis in the Complaint, or the exhibits, to infer that Rollinski is Illya, rather than Esteban Yaniz, Keisha Ruff, John Monarch, Karl Steinborn or, more likely, a member of the Anonymous hacking group. Likewise, there is no basis in the Complaint to infer that Illya operated the @performoutsider Twitter Account. Thus, Gorman does not plausibly allege that Illya is the author either of the Rollinski emails or tweets from the @performoutsider Twitter Account.

national audience with their comments, even if they knew the object of their comments lived in Pennsylvania. *See id.* If, as Gorman alleges, the purpose of the Performoutsider Post was to injure his reputation, it was directed at a broad national readership of customers of Gorman's companies, rather than just an audience of one in Pennsylvania. Accordingly, Gorman has failed to allege facts sufficient to establish this Court's personal jurisdiction over Illya.

**B.     The Action Should Be Dismissed as Untimely on Grounds That it Was Brought Long After the One-Year Limitations Period of Gorman's Claims**

Even if this Court had personal jurisdiction over Illya, which it does not, the action should be dismissed on the independent grounds that it was brought long after the one-year limitations period for Gorman's claims.

Pennsylvania expressly sets the statute of limitations for all claims sounding in defamation or invasion of privacy at one year from the date of publication. *See* 42 PA. CONS.STAT. ANN. § 5523(1) (providing one year statute of limitation for claims of libel, slander or invasion of privacy); *Reese v. Pook & Pook, LLC.*, 158 F. Supp. 3d 271, 295 (E.D. Pa. 2016) (collecting cases). Pennsylvania state and federal courts further have held that the same one-year limitations period extends to any other tort claim based on a harmful publication—no matter the label placed on the cause of action—including false light and intentional infliction of emotional distress.[10] Finally, under Pennsylvania law, the statute of limitations for civil conspiracy is the same as the statute of limitations for the underlying tort. *See Reynolds v. Fed. Bureau of Prisons*, No. CIV.A. 09-3096,

---

[10] *See, e.g., Evans v. Philadelphia Newspapers, Inc*., 411 Pa.Super. 244, 601 A.2d 330 (1991); *Tucker v. MTS, Inc.*, 1998 WL 67527, *3 (E.D.Pa.1998) aff'd, 229 F.3d 1139 (3d Cir.2000) (concluding that the plaintiffs' emotional distress claim exists solely because of various defendants' roles in disseminating allegedly defamatory statements and as such, it is subject to the statute of limitations for defamation); *Ghrist v. CBS Broad., Inc*., 40 F. Supp. 3d 623, 630 (W.D. Pa. 2014) (dismissing claim of intentional infliction of emotional distress); *Little v. City & Cty. of Philadelphia*, Civ. A. No. 07–5361, 2008 WL 2704579, at *4 (E.D.Pa. July 3, 2008) (holding that false light claim is subject to a one-year statute of limitations of Section 5523).

2010 WL 744127, at *8 (E.D. Pa. Mar. 2, 2010).

"Generally, a statute of limitations period begins to run when a cause of action accrues; *i.e.*, when an injury is inflicted and the corresponding right to institute a suit for damages arises." *Wilson v. El-Daief*, 600 Pa. 161, 964 A.2d 354, 361 (Pa. 2009). "It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform him or herself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period." *Hayward v. Medical Center of Beaver County*, 530 Pa. 320, 608 A.2d 1040, 1042 (Pa. 1992). Once the prescribed statutory period has expired, the complaining party is barred from bringing suit. *See Gleason v. Borough of Moosic*, 609 Pa. 353, 361-362, 15 A.3d 479, 484, 2011 Pa. LEXIS 817, *10.

The Performoutsider Post was published on July 29, 2013, over seven years before Gorman filed his Complaint, on September 28, 2020. *See* Compl. ¶ 11 & Exh. 1. Accordingly, on the face of the Complaint, each of Gorman's claims is untimely and should be dismissed.

To avoid this result, Gorman apparently seeks to rely upon the "discovery rule," or principles of tolling. But no such principles apply. In a claim of defamation—based upon a publication made to the world—the plaintiff's alleged injury is by its nature overt. Thus, there necessarily can be no "discovery rule." *See Barrett v. Catacombs Press*, 64 F. Supp. 2d 440, 446 (E.D. Pa. 1999) (stating "the discovery rule should not be applied where, as here, a defendant's alleged defamation was not done in a manner meant to conceal the subject matter of the defamation"). Furthermore, "[s]tate and federal courts in Pennsylvania, applying Pennsylvania law, have expressly rejected application of the discovery rule where a plaintiff merely lacks knowledge as to the defendant's identity." *Bradley v. Conner*, No. CIV.A. 07-1347, 2007 WL 4241846, at *4 (W.D. Pa. Nov. 29, 2007) (dismissing defamation claim against anonymous

message board poster on grounds of limitations period).[11]

Gorman apparently contends that there should be an exception to this well-established body of law where the defendant allegedly has provided misleading contact information. *See* Compl. ¶¶ 16-20.[12] However, Gorman does not allege that the email address and phone number registered in connection with the Performoutsider Website were incorrect, but only the physical mailing address. In any case, Pennsylvania law already has addressed these circumstances and established that, where the identity of an anonymous poster of allegedly defamatory material on the internet is elusive, a plaintiff's remedy is to bring an action against an internet service provider, domain provider or web hosting service to compel disclosure of the identity of the defendant.[13]

In 2013-2014, Gorman was represented by able counsel at Blank Rome LLP and could

---

[11] *See Cathcart v. Keene Indus. Insulation*, 324 Pa.Super. 123, 471 A.2d 493, 500 (Pa.Super.Ct.1984) ("mere difficulty in identifying defendants was not sufficient to toll the running of the statute of limitations as to those defendants"); *Slozer v. Slattery*, 2015 Pa. Super. Unpub. LEXIS 4259, *14, 44 Media L. Rep. 1112, 134 A.3d 497, 2015 WL 7282971 ("Contrary to Appellants' implication, neither the commencement of the running of a statute of limitations, nor the application of the 'discovery rule' is dependent on a plaintiff's knowledge of the identity of the individual causing the injury."); *Faulls v. Proctor & Gamble Paper Prods. Co.*, 1993 WL 765822, at *4 (Pa.Com.Pl. Jan.15, 1993) (rejecting application of the discovery rule to toll the statute of limitations until the plaintiff learned the identities of the individuals who defamed him); *Robinson v. Lowe's Home Centers, Inc.*, No. CIV.A. 06-4403, 2007 WL 2739187, at *2 (E.D. Pa. Sept. 19, 2007) ("The Pennsylvania Superior Court has generally found the discovery rule inapplicable in cases where a plaintiff was aware of an injury and its cause but had not determined the identity of the defendants within the limitations period."); *Debbs v. Thiokol Corp.*, 1993 WL 190872, at *4 (E.D.Pa. June 4, 1993) ("An allegation of mere difficulty in identifying the defendants will not toll the statute of limitations."); *Merry v. Westinghouse Elec. Corp.*, 684 F.Supp. 852, 855 (M.D.Pa.1988) (rejecting application of discovery rule).

[12] 15 U.S.C. § 1125(d)(1)(B)(i)(VII) (West 2021), cited in ¶ 20 of the Complaint, which relates to claims of cybersquatting, is irrelevant. Gorman's apparent reliance upon this provision confirms that there is no authority for his novel assertion.

[13] *See Polito v. AOL Time Warner, Inc.*, 2004 Pa. Dist. & Cnty. Dec. LEXIS 340, *35, 78 Pa. D. & C.4th 328, 351 (compelling internet service provider to disclose identity of anonymous subscribers who posted allegedly defamatory content); *Klehr Harrison Harvey Branzburg & Ellers, LLP v. JPA Dev., Inc.*, 2006 Phila. Ct. Com. Pl. LEXIS 1, *34, 2006 WL 37020 (compelling disclosure of identity of anonymous poster).

have pursued this remedy to identify and locate Illya within the limitations period of his claims. Gorman instead chose to pursue his claims against Monarch, which he has actively pursued to the present. Over seven years after Gorman's claims accrued, Illya is entitled to the repose granted to him under Pennsylvania law. Gorman's claims thus should be dismissed on grounds that they are untimely under the applicable one-year limitations period.

### C. The Complaint Should Be Dismissed on Grounds that it Fails to State Any Claim for Which Relief May be Granted

Finally, the Complaint also should be dismissed on the merits of Gorman's claims, which are contradicted by the Complaint's exhibits, and on their face fail to state any claim for which relief may be granted.

Upon a motion to dismiss under Rule 12(b)(6), the court must construe a complaint liberally and generally accept the facts as pled. *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In reviewing a motion to dismiss, the court need not limit itself to the four corners of the pleadings, but may consider any documents quoted, relied upon, incorporated by reference or otherwise integral to the complaint. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111 (3d Cir. 2018) ("As exhibits to her own complaint, these materials were appropriate to consider on a motion to dismiss."). Where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true. *See id.*; *U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC*, 519 F. Supp. 2d 515, 520 (E.D. Pa. 2006), on reconsideration in part (Feb. 26, 2007).

Separately, under Rule 8, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to state a claim to relief that is plausible on its face." *Grimes v. Avis Budget Grp.*, 762 F. App'x 130, 132 (3d Cir.), cert. denied, 140 S. Ct. 164, 205 L.

Ed. 2d 92 (2019) (citing *Twombl*y, 550 U.S. 570, 936, 127 S.Ct. 1955). "The plausibility standard requires a pleading to show "more than a sheer possibility that a defendant has acted unlawfully." *Minielly v. Acme Cryogenics, Inc*., No. CV 15-6164, 2016 WL 1221640, at *3 (E.D. Pa. Mar. 28, 2016).

### 1.    The Complaint Fails to State a Claim for Defamation

Under the foregoing standards, the Complaint fails to state a viable claim of defamation.

To state a cause of action for defamation under Pennsylvania law, a plaintiff must establish: "(1) the defamatory character of the communication; (2) its publication by the defendant; (3) a reference to the plaintiff; (4) a recipient's understanding of the communication's defamatory character and its application to plaintiff; (5) special harm resulting from the publication; and (6) abuse of any conditional privilege." *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 173–74 (3d Cir. 2012) (quoting *Iafrate v. Hadesty*, 423 Pa.Super. 619, 621 A.2d 1005, 1006 (1993)); *Smith v. Wagner*, 403 Pa.Super. 316, 588 A.2d 1308, 1311 (1991).

 "Whether a communication is capable of defamatory meaning is a 'threshold issue' to be determined by the court." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013). A publication cannot be rendered defamatory "by an innuendo which puts an unfair and forced construction on the interpretation of the publication." *Thomas Merton Ctr. v. Rockwell Intern. Corp*., 497 Pa. 460, 442 A.2d 213, 217 (1981) (quoting *Sarkees v. Warner–West Corp*., 349 Pa. 365, 37 A.2d 544, 546 (1944)). Truth is an absolute defense to defamation. *See Ciolli*, 651 F. Supp. 2d at 375–76; *Fanelle v. LoJack Corp.*, 79 F.Supp.2d 558, 563 (E.D.Pa.2000); *Slozer*, 2015 Pa. Super. Unpub. LEXIS 4259, *33, 44 Media L. Rep. 1112, 134 A.3d 497, 2015 WL 7282971.

Gorman's contention in the Complaint that the Performoutsider Post "falsely stated that Gorman had sexually assaulted a minor," Compl. ¶ 12, is flatly contradicted by the Complaint and exhibits themselves. It is a matter of public record that Gorman was convicted of raping two fellow

college students at Florida State University, served five years in prison and is a registered sex offender. *See* Compl., Exh. 1. The sole statement in the Performoutsider Post which Gorman cites as false is a ***republication*** of a letter to the editor of a newspaper by Gorman's own prosecutor, William N. Meggs. *See id.* It states in relevant part:

> Had Parker done her homework, she would have found that ***Gorman invited the underage victim to go out in a limousine with four other girls and provided plenty of booze.*** He also stopped to pick up a stripper and proceeded to a local bar. It was there that the victim became ill and asked to be taken home. Gorman volunteered to take her home but bypassed her dorm and took her to his house. Charged with rape—his second charge in a matter of months—Gorman's "first" story was that nothing happened. When positive DNA results were returned, his firm denials change to "it was consensual."

*Id.* at 3 & 4 (emphasis added). In contending that this statement accused him of "child molestation" or "sexually assaulting a minor," Gorman simply is disingenuous. In the context of the article, it is clear that Gorman's victim was a college student living in a "dorm"—and, thus, was over eighteen years of age, rather than a "child" or a "minor." *See id.* While Meggs does refer to the victim as "underage," it is clear in the context that he is referring to her being under the ***legal drinking age***, which is significant in view of Gorman's use of "plenty of booze" to inebriate her and carry out the rape. *See id.* This sentence—the only one upon which Gorman relies—simply does not support the interpretation which Gorman ascribes to it and fails to support a claim of defamation as a matter of law. *See Gibney*, 547 F. App'x at 114 (stating innuendo "cannot be used to . . . enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear").[14]

Nor does the Performoutsider Post's mere linking to the AnonNews Website "incorporate

---

[14] The republication of Megg's statement also falls within the protections of Pennsylvania's fair report privilege. *See Straub v. CBS Broad., Inc.*, No. CV 14-5634, 2016 WL 943954, at *7 (E.D. Pa. Mar. 11, 2016).

by reference" its content for purposes of Gorman's claims as he contends. *See In re Philadelphia Newspapers*, 690 F.3d at 175 ("In a case with facts similar to this appeal, the Court held that a link and reference to an allegedly defamatory article did not amount to a republication of the article."). "[A] mere reference to an article, regardless how favorable it is as long as it does not restate the defamatory material, does not republish the material." *Id.* (quoting *Salyer v. Southern Poverty Law Center, Inc.*, 701 F.Supp.2d 912 (W.D.Ky.2009)).

> These traditional principles are as applicable to Internet publication as traditional publication, if not more so. Publishing a favorable reference with a link on the Internet is significantly easier. ***Taken together, though a link and reference may bring readers' attention to the existence of an article, they do not republish the article.***

*Id.* (emphasis added); *see Slozer*, 2015 Pa. Super. Unpub. LEXIS 4259, *15, 44 Media L. Rep. 1112, 134 A.3d 497, 2015 WL 7282971 ("We also conclude that Appellee Holzhafer's posting a link to the allegedly defamatory website with a 'like' designation on her Facebook page, is not a republication of the content of the website sufficient to support a separate cause of action for defamation against her."). Gorman does not allege that Illya did more than link to the AnonNews Website. Thus, as a matter of law, Illya cannot be liable for any of the content of that site—much of which was posted ***after*** the Performoutsider Post and could not in any case have been in Illya's knowledge.

Finally, the Complaint does not plausibly allege that Illya posted any of the content on the @performanceoutsider Twitter Account. *See* Compl. ¶ 26. No allegations in the Complaint come close to establishing that only the registrant of [www.performoutsider.com](www.performoutsider.com) would be allowed by Twitter to set up an account under the name @performoutsider. As in the case of the Rollinski Emails, the Complaint includes the names of many individuals who could have set up the account, including Esteban Yaniz, Keisha Ruff, John Monarch, Karl Steinborn or a member of the Anonymous hacking group. Nor does the Complaint attach the allegedly offending Twitter posts.

Thus, it does not afford proper notice of Gorman's claims based upon them.

In view of the foregoing, the Complaint fails to state a claim against Illya for alleged defamation.

### 2.    The Complaint Fails to State a Claim for False Light

For similar reasons, the Complaint also fails to state a claim against Illya for false light.

The tort of false light involves "publicity that unreasonably places the other in a false light before the public." *Rush v. Phila. Newspapers, Inc.*, 732 A.2d 648, 654 (Pa.Super.Ct.1999) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa.Super.Ct.1997)); *see also Seale v. Gramercy Pictures*, 964 F.Supp. 918, 923 (E.D.Pa.1997) (quoting Restatement (Second) of Torts § 652E). The Pennsylvania Superior Court has stated that "[t]he elements to be proven [in a false light claim] are publicity, given to private facts, which would be highly offensive to a reasonable person and which are not of legitimate concern to the public." *Rush*, 732 A.2d at 654 (quoting *Strickland*, 700 A.2d at 987); *see Ciolli*, 651 F. Supp. 2d at 376. To find a cause of action for false light, there must be "a major misrepresentation of a person's character, history, activities or beliefs ... that could reasonably be expected to cause a reasonable man to take serious offense." *Rush*, 732 A.2d at 654 (citing *Strickland*, 700 A.2d at 987); *see also Seale*, 964 F.Supp. at 924 (quoting Restatement (Second) of Torts § 652E cmt. c).

The circumstances surrounding Gorman's two rape convictions are hardly "private facts" which "are not of legitimate concern to the public." On the contrary, they were widely reported in the press at the time of his trial and conviction, and Gorman remains a publicly registered sex offender, the location of whom is a matter of public disclosure. *See* Compl., Exh. 1. Even if the allegedly defamatory statements truly accused Gorman of sexually assaulting a minor, under the circumstances that would not be a "major misrepresentation" of the already sordid facts. But, on the face of the Complaint and exhibits, there plainly was no misrepresentation and the

Performoutsider Post merely reported truthful and accurate statements by Gorman's prosecutor, Meggs. Accordingly, the Complaint fails to state a claim of false light.

       **3.**      **The Complaint Fails to State a Claim for Intentional Infliction of Emotional Distress**

The Complaint further fails to state a claim for intentional infliction of emotional distress.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege sufficient facts demonstrating that (1) the defendant's conduct was extreme and outrageous; (2) the defendant's conduct caused the plaintiff severe emotional distress; and that (3) the defendant acted intending to cause that person such distress or with knowledge that such distress was substantially certain to occur. *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 217 (3d Cir.2001).

Liability for intentional infliction of emotional distress "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Reedy v. Evanson*, 615 F.3d 197, 231–32 (3d Cir.2010) (quoting *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1184 (Pa.Super.Ct.1989)).

In addition, to state a claim, a plaintiff must allege that he or she "suffer[ed] some type of resulting physical harm due to the defendant's outrageous conduct," which must be supported by competent medical evidence. *See Reedy*, 615 F.3d at 231; *see also Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa.Super.Ct.2005); *Fewell v. Besner*, 444 Pa.Super. 559, 664 A.2d 577, 582 (1995) ("A plaintiff must also show physical injury or harm in order to sustain a cause of action for intentional infliction of emotional distress."); *Ghrist v. CBS Broad., Inc.*, 40 F. Supp. 3d 623, 630–31 (W.D. Pa. 2014); *Wilson v. Am. Gen. Fin. Inc.*, 807 F.Supp.2d 291, 303 (W.D.Pa.2011).

The Complaint fails to allege the kind of "extreme and outrageous" facts which are of the magnitude necessary to support a claim for intentional infliction of emotional distress. The only

alleged conduct in any way linked to Illya is the posting of truthful and accurate statements made by Gorman's prosecutor, Meggs. Furthermore, the Complaint is devoid of the necessary allegations that Illya specifically intended to cause Gorman severe emotional distress, knowing that Gorman was likely to suffer severe emotional distress—let alone that Gorman actually experienced any concrete physical injury, as found by a physician. Accordingly, the Complaint fails to state a claim for intentional infliction of emotional distress.

### 4.    The Complaint Fails to State a Claim for Civil Conspiracy

Finally, the Complaint fails to state a claim for civil conspiracy.

A claim of civil conspiracy in Pennsylvania contains the following elements: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. *See Goldstein v. Phillip Morris, Inc*., 854 A.2d 585, 590 (Pa.Super.Ct.2004). An "'actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor.'" *Levin v. Upper Makefield Twp*., 90 Fed.Appx. 653, 667 (3d Cir.2004) (quoting *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir.1999)); *see also Duffy v. Lawyers Title Ins. Co*., 972 F.Supp.2d 683, 698 (E.D.Pa.2013) ("Absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.").

To allege a plausible claim of civil conspiracy, a plaintiff must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." *Reese*, 158 F. Supp. 3d at 292 (quoting *Spencer v. Steinman*, 968 F.Supp. 1011, 1020 (E.D.Pa.1997)). It is not enough that the "end result of the parties' independent conduct caused plaintiff harm or even that

the alleged perpetrators of the harm acted in conscious parallelism." *Id.*

Gorman's claim of civil conspiracy fails because, with the voluntary dismissal of Illya's parent's and brother, the Complaint no longer alleges a conspiracy between and among two or more wrongdoers. In any case, the claim fails because Gorman has not sufficiently alleged any underlying tort of defamation, false light or intentional infliction of emotional distress.

## CONCLUSION

For the reasons stated above, Illya respectfully request that the Court grant his motion to dismiss the Complaint in its entirety and grant all such other and further relief as the Court deems just and proper.

Dated:      April 26, 2021

By: /s/ Matthew Faranda-Diedrich
Matthew Faranda-Diedrich, Esquire
ROYER COOPER COHEN BRAUNFELD LLC
PA Id. No. 203541
Two Logan Square
100 N. 18th St., Suite 710
Philadelphia, PA 19103
Telephone 267-546-0275
Facsimile 484-362-2630
mfd@rccblaw.com

By: /s/ Matthew J. Press
Matthew J. Press, Esquire*
PRESS KORAL LLP
641 Lexington Avenue, 13th Floor
New York, New York 10022
Telephone (212) 922-1111
Facsimile (347) 342-3882
mpress@presskoral.com
*Admitted Pro Hac Vice*

**Counsel to Defendant Illya Shpetrik**