IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD A. GORMAN,**<br><br>Plaintiff,<br><br>v.<br><br>**ILYA SHPETRIK,**<br><br>Defendant. | CIVIL ACTION NO. 20-4759 |

## DECLARATION OF RICHARD A. GORMAN

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1. I am the plaintiff in this matter.

2. I have resided in Pennsylvania's Eastern District since 2009.

3. From 2011 to December 2013, I resided at 1101 Locust Street, Philadelphia, PA 19107.

4. From December 2013 to the present, I have resided at 7 Pin Oak Drive, Chadds Ford, PA 19317.

5. From 2011 to 2015, I owned and operated Brand.com, Inc., formerly Reputation Changer, LLC, a business located at 601 Walnut Street, Philadelphia, PA 19106.

6. On July 29, 2013, Defendant published an article titled "Richard Gorman aka directresponse.net Criminal Past" to his <performoutsider.com> website. A copy of the article is being filed along with my declaration as Exhibit 1.

1

7. The article makes several references to an "underage victim," suggesting I was convicted of raping a minor.

8. The accusation is false, a fact the article's author could have easily confirmed through publicly available records.

9. The article was posted to the <performoutsider.com> website by "admin," which indicated to me that it had been published by the website's registrant rather than a third party.

10. As of July 2013, John Monarch had not yet identified the Defendant as the person responsible for the content published on the <performoutsider.com> website and the @performoutsider Twitter account.

11. In fact, it wouldn't be for another seven years later, until July 30, 2020, that Monarch finally divulged who Defendant was and where he lived, but only after a court ordered him to do so. See Exhibit 2 at 4.

12. Consequently, in July of 2013, I searched the WHOIS database to try and find the registrant's contact information.

13. By way of background, when domain name registrants apply for domain names, domain name registrars are required to obtain a registrant's contact information – including the registrant's name, address, email address, and phone number – to maintain the integrity of the domain-name registration and website-ownership process.

14. In addition, registration agreements expressly require that registrants provide complete and accurate contact information to registrars, and to update their contact information whenever it changes.

15. Then, the contact information for registrants is aggregated onto a WHOIS database that anyone can search.

16. When I searched the WHOIS database for the <performoutsider.com> domain name, however, the only information that was available was the identity of the registrar, GoDaddy.com.

17. For an annual fee, GoDaddy.com offers its registrants a "privacy" service that allows them to keep their contact information off the WHOIS database.

18. Defendant availed himself of GoDaddy.com's "privacy" service to conceal his identity.

19. I thus retained legal counsel to help me identify who was responsible.

20. Initially, my counsel contacted GoDaddy.com directly to request the <performoutsider.com> registrant's contact information.

21. But GoDaddy.com would not voluntarily release it.

22. Thus, on October 7, 2013, I filed a lawsuit in Leon County Florida for libel and slander, naming "John Doe 1" and "John Doe 2" as defendants.

23. My counsel prepared and served a subpoena duces tecum on GoDaddy.com to compel it to produce the <performoutsider.com> registrant's

contact information.

24. GoDaddy.com produced the contact information that Defendant had provided it when registering the <performoutsider.com> domain name.

25. According to the contact information, the registrant was "Ilya S" with an address at 43 Billington Cres., Toronto, ON M3A2G8, an email of jasonstratham@gmail.com and a (416) 273-7596 phone number.

26. Defendant did not provide a last name with the contact information, let alone his own. In addition, the phone number was not an active line, and the email, which used the name of the actor Jason Stratham, inoperative.

27. Through additional investigation, I learned that the address provided was to a halfway house, and the owner didn't know anyone named "Ilya S."

28. By providing GoDaddy.com with false contact information, Defendant was able to keep his identity and location concealed, even after GoDaddy.com was compelled to disclose it.

29. We informed GoDaddy.com that the <performoutsider.com> contact information was false.

30. On November 19, 2013, GoDaddy.com wrote to Defendant "as official notification that the contact information provided for your domain registration for PERFORMOUTSIDER.COM appears to be invalid, or incomplete. Please update the information within 5 days as per Section 3 of your Registration

Agreement…. If the update has not been accomplished within 5 days, this can be grounds for cancellation of the domain registration and possible reassignment to another party as per Section 6." See Exhibit 3.

31. Soon after, Defendant changed the <performoutsider.com> contact information from "Ilya S" to "Ilya Syanov," but kept the same street address, email, and phone number. See Exhibit 4.

32. "Ilya Syanov" is not Defendant's name, but the name of a famous Soviet soldier who raised his country's flag over the Reichstag at the end of World War II.

33. Defendant's change nevertheless satisfied GoDaddy.com, which allowed him to keep the <performoutsider.com> domain name and the associated website.

34. At this point, Defendant knew I was trying to identify and locate the author of the <performoutsider.com> article.

35. This is confirmed through various Facebook conversations Defendant was having at the time with John Monarch. See Exhibit 5.[1]

36. By October 26, 2013, I was the subject of discussions between Defendant and Monarch. See Exhibit 5 at 1.

---

[1] John Monarch produced Exhibit 5 in discovery in May of 2014.

37. And as their conversations show, Defendant variously refers to himself as "Ilya Putin," "Ilya Blt," "Illya Putin (Blt)," and "Illya Putin," never using his real name. See also Exhibit 6.[2]

38. Then, on December 19, 2013, Defendant published a tweet to his @performoutsider Twitter account where he repeated his false accusation that I had been convicted of sexually assaulting a minor. See Exhibit 7.

39. Specifically, Defendant tweeted at Zac Johnson, who was a Brand.com employee, the following: "@zacjohnson How does it feel working for a person who was convicted of a sexual assault of a minor." Id.

40. In addition, Defendant linked his <performoutisder.com> website to a page claiming I was a "convicted child molesting rapist," that I raped two minors, and that my daughter was conceived through rape. See Exhibit 8.

41. On December 20, 2013, Defendant and Monarch discussed the previous day's tweet:

| John Monarch | Friday, December 20, 2013 at 2:10am EST |
|---|---|
| Looks like he got your twitter banned already | |
| Ilya Putin | Friday, December 20, 2013 at 7:32am EST |
| na refresh | |

See Exhibit 5 at 1-2.

---

[2] Exhibit 6 was also produced by John Monarch during discovery, but not until August 1, 2020, after my counsel filed a motion to compel and the court ordered him to produce supplemental discovery.

42.     On December 21, 2013, Defendant and Monarch continued their conversation, this time about Defendant's liability for the <performoutsider.com> website and his efforts to avoid being found:

| Ilya Putin | Saturday, December 21, 2013 at 4:15pm EST |
|---|---|
| hes just grasping at straws | |
| Ilya Putin | Saturday, December 21, 2013 at 4:15pm EST |
| cause he has no case against PO n such | |
| John Monarch | Saturday, December 21, 2013 at 4:15pm EST |
| yep | |
| Ilya Putin | Saturday, December 21, 2013 at 4:16pm EST |
| guess i have to do seo on my site now..... | |
| John Monarch | Saturday, December 21, 2013 at 4:16pm EST |
| lol | |
| Ilya Putin | Saturday, December 21, 2013 at 4:17pm EST |
| i should somehow make it look like someone else owns po | |
| Ilya Putin | Saturday, December 21, 2013 at 4:17pm EST |
| so he keeps sending stuff there | |
| Ilya Putin | Saturday, December 21, 2013 at 4:17pm EST |
| lol | |
| Ilya Putin | Saturday, December 21, 2013 at 4:18pm EST |
| ill redirect phili to performinsider or meatspin | |
| Ilya Putin | Saturday, December 21, 2013 at 4:18pm EST |
| lol | |
| John Monarch | Saturday, December 21, 2013 at 4:18pm EST |
| lol | |
| John Monarch | Saturday, December 21, 2013 at 4:19pm EST |
| this just all keeps getting better | |
| John Monarch | Saturday, December 21, 2013 at 4:20pm EST |
| he knows his industry rep is in jeopardy | |

See Exhibit 6 at 3-4.

43. Defendant's statement that "ill redirect phili to performinsider or meatspin" establishes that he knew my company and I were in Philadelphia.

44. Moreover, by tweeting his defamatory accusation at Zac Johnson, who he knew was a Brand.com employee, Defendant expressly aimed his conduct here.[3]

45. On January 6, 2014, Monarch asked Defendant to remove his company's logo from Defendant's <performoutsider.com> website:

> **John Monarch** — Monday, January 6, 2014 at 2:03pm EST
> Apparently Gorman is asking around about me, he thinks I own PO and that you're fake
>
> **Ilya Putin** — Monday, January 6, 2014 at 2:04pm EST
> lol
>
> **John Monarch** — Monday, January 6, 2014 at 2:15pm EST
> Finding out more he's been asking just about everyone he knows
>
> **John Monarch** — Thursday, January 16, 2014 at 11:19am EST
> in the mean time it may be a good idea for the DO logo to be off of PO
>
> **Ilya Putin** — Thursday, January 16, 2014 at 11:19am EST
> Na. I think it's time to do seo for his name/company names
>
> **Ilya Putin** — Thursday, January 16, 2014 at 11:19am EST
> and rank it #1-3
>
> **Ilya Putin** — Thursday, January 16, 2014 at 11:20am EST
> I can remove it if you'd like, let me know
>
> **John Monarch** — Thursday, January 16, 2014 at 11:23am EST
> yeah for now I think take the logo down until this is all over if you don't mind, it's easy to prove you aren't me

See Exhibit 5 at 5-6.

---

[3] Defendant's knowledge that Zac Johnson worked at Brand.com is established both through his tweet and his October 23, 2013 conversation with Monarch. See Exhibit 5 at 1.

8

46. On January 24, 2014, I sued the <performoutsider.com> website, John Monarch, Karl Steinborn, and others, in Philadelphia County's Court of Common Pleas.

47. On February 14, 2014, Monarch removed the action to the United States District Court for the Eastern District of Pennsylvania.

48. On February 19, 2014, Monarch moved to dismiss the claims against him for lack of personal jurisdiction.

49. In the meantime, my lawyers and I were attempting to serve the lawsuit on "Ilya Syanov" under the Hague Convention.

50. On March 10, 2014, Canada's Office of the Ministry of the Attorney General attempted personal service on "Ilya Syanov" at the address Defendant provided with his <performoutsider.com> contact information – 43 Billington Cres., Toronto, ON M3A2G8.

51. The homeowner, Barbara Ann Young, advised that she did not own <performoutsider.com>, that she had never heard of <performoutsider.com>, and that "Ilya Syanov" did not live there.

52. Defendant's efforts to conceal his identity were once again successful.

53. Consequently, on May 14, 2014, we filed a motion to allow alternative service by publication on the <performoutsider.com> website.

54. Monarch, despite claiming he had no ownership interest in the website and despite having already moved to dismiss the claims against him for lack of personal jurisdiction, filed a response in opposition to the motion for alternative service.

55. In his response, Monarch represented to the court that he "does not know Ilya's true name, and [he] does not have any contact information for Ilya that has not been already provided to Plaintiff."

56. The court denied the motion for alternative service and dismissed <performoutsider.com> from the lawsuit.

57. After that, I voluntarily dismissed my claims against Monarch in Pennsylvania, and re-filed them in South Carolina.

58. The South Carolina action remains pending.

59. Until the South Carolina action was on the brink of trial, however, Monarch had refused to disclose Defendant's real name, or where he could be found.

60. At his May 2, 2016 deposition, for example, Monarch was asked who posted the defamatory statements about me on the internet. Monarch testified, "That it was Ilya."

61. When asked for Defendant's last name, Monarch testified, "I don't exactly know it. I don't actually know it. I believe it starts with an S, but I don't know."

62. When asked whether he ever asked "Ilya" to come forward as the person responsible for the internet postings, Monarch testified, "He's in Canada and that adds to the challenge a bit, but … I don't really have any other contact information for him really."

63. When asked whether he ever talked to "Ilya" about the Pennsylvania lawsuit, Monarch testified, "I said he should pay for all this because he started it."

64. In responding to written discovery, Monarch likewise refused to disclose anything beyond the contact information Defendant provided to GoDaddy.com.

65. My counsel thus filed a motion to compel Monarch to fully and fairly answer my interrogatories, and the court ordered him to do so.

66. On July 30, 2020, Monarch produced "Supplemental Answers to Plaintiff's Interrogatories." See Exhibit 2.

67. In Interrogatory No. 1, Monarch was asked to, "Give the names and addresses of persons known to the parties or counsel to be witnesses concerning the facts of this case."

68. In his July 30, 2020 court-ordered supplement, Monarch answered under oath and penalty of perjury:

> Ilya Shpetrik aka "Ilya Syanov," "Ilya Putin," "Ilya Putin (BLT)," "Ilya BLT," "Ilya S," and "Illya S"
> 33 Mogul Drive
> Toronto, Ontario M2H 2M8
> Canada

See Exhibit 2 at 4.

69. In Interrogatory No. 5, Monarch was asked to, "Identify all persons who own, manage, or control the content displayed on the website known as 'Perform Outsider' located at www.performoutsider.com ('PerformOutsider Website') and/or the Twitter account @performoutsider."

70. In his July 30, 2020 court-ordered supplement, Monarch answered under oath and penalty of perjury:

> Defendant Monarch, upon information and belief, supplements his Response to General Interrogatory No. 5 consistent with the above supplementation of Rule 33(b) Interrogatory No. 1 that provides contact information for the person believed to be Ilya Putin, Ilya Syanov, Ilya Putin (BLT), Ilya BLT, Ilya S, and/or Illya S

See Exhibit 2 at 7.

71. On September 28, 2020, less than two months after Monarch's court-ordered supplemental discovery, I initiated this lawsuit against Defendant.

72. Once again, we attempted to serve the lawsuit on Defendant under the Hague Convention.

73. On October 20, 2020, I understand that Defendant's counsel called my counsel, advised him that he was representing Defendant, and that service had been attempted though "the efficacy of which may be in question."

74. I also understand that my counsel spoke with Defendant's counsel the next day, during which Defendant's counsel indicated that Defendant did not live at the address Monarch provided.

75. Accordingly, my counsel requested Defendant's counsel to provide Defendant's address.

76. To this day, however, Defendant's counsel has withheld that information, including in these motion papers.

77. In the meantime, on November 6th, 9th, and 22nd, 2020, Ontario's Office of the Ministry of the Attorney General attempted personal service on "Ilya Shpetrik" at 33 Mogul Drive, Toronto, Ontario M2H 2M83.

78. The Office could not perfect service, however. See Exhibit 9.

79. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 10th day of May 2021

_____
Richard A. Gorman