**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RICHARD A. GORMAN,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 20-4759** |
| **ILYA SHPETRIK,** | |
| **Defendant.** | |

**<u>MEMORANDUM OPINION</u>**

**Rufe, J.**                                                                                   **March 10, 2022**

Richard A. Gorman brings this action against Ilya Shpetrik asserting claims for defamation, false light, intentional infliction of emotional distress, and civil conspiracy for Shpetrik's alleged role in generating online posts and tweets that damaged Gorman's reputation.[1] Shpetrik has filed a motion to dismiss for lack of personal jurisdiction, untimeliness, and failure to state a claim. For the reasons discussed below, the Court will grant in part and deny in part Shpetrik's motion to dismiss.

**I.   BACKGROUND[2]**

Plaintiff alleges that Defendant intended to damage Plaintiff's reputation and business relationships by posting false information on a website and in social media posts.[3] On July 29,

---

[1] The Court notes that Defendant filed two motions to dismiss within one day of each other that are nearly identical. *See* Def.'s Mot. Dismiss [Doc. No. 12]; Def.'s Mot. Dismiss [Doc. No. 13]. As it appears that Plaintiff responded to Defendant's later-filed motion, the Court will consider the second motion on the merits and dismiss the first as moot.

[2] Plaintiff's Complaint alleges these facts, which the Court will accept as true for the purposes of evaluating Defendant's motion to dismiss.

[3] The Complaint alleges that this Court has diversity jurisdiction over this matter as Plaintiff is a citizen of Pennsylvania, Defendant is a citizen of Canada, and Plaintiff is seeking more than $75,000 in damages. Compl. [Doc. No. 1] ¶¶ 1–2, 7.

2013, the website performoutsider.com published an article titled "Richard Gorman aka directresponse.net Criminal Past," which quoted and linked to information about Plaintiff's convictions for sexually assaulting two women while he was a student at Florida State University.[4] The website falsely stated that Plaintiff sexually assaulted a minor.[5] Additionally, the website included a link to AnonNews, a website connected with the hacking group "Anonymous," that included posts which falsely stated that Gorman is a child molester and a pedophile.[6] Defendant owned, managed, and controlled the content published on performoutsider.com, and Defendant registered false contact information for the domain name.[7]

On December 10, 2013, Gorman received an email from a person using the name "Rick Rollinski," who threatened to "'ruin [Gorman's] personal life and [his] professional life' unless he sent half-a-million dollars in bitcoin, a 'cryptocurrency,' to an anonymous bitcoin address."[8] On December 12, 2013, Rollinski sent two emails that repeated these threats.[9] Defendant and others sent these emails in an attempt to blackmail Plaintiff before publishing disparaging

---

[4] Compl. [Doc. No. 1] ¶ 11; Compl. Ex. 1 [Doc. No. 1-5]. In 2003, Plaintiff was charged with sexually assaulting two college students. Compl. Ex. 1 [Doc. No. 1-5]. A jury found Plaintiff guilty with respect to one victim, and Plaintiff pleaded no contest to a lesser charge, misdemeanor battery, with respect to the other victim. Compl. Ex. 1 [Doc. No. 1-5]; Pl.'s Opp'n Brief Def.'s Mot. Dismiss [Doc No. 14] at 6. Plaintiff served a prison sentence and registered as a sex offender. Compl. Ex. 1 [Doc. No. 1-5]; Def.'s Mem. Supp. Mot. Dismiss [Doc. No. 13-1] at 2. Plaintiff later moved to Pennsylvania and built several successful businesses. Pl.'s Opp'n Brief Def.'s Mot. Dismiss [Doc No. 14] at 6.

[5] Compl. [Doc. No. 1] ¶ 12.

[6] Compl. [Doc. No. 1] ¶¶ 13, 14.

[7] Compl. [Doc. No. 1] ¶¶ 16–18, 36, 49, 51.

[8] Compl. [Doc. No. 1] ¶¶ 21–22.

[9] Compl. [Doc. No. 1] ¶¶ 23–24.

content on @performoutsider, a Twitter account owned, managed, and controlled by

Defendant.[10] Plaintiff did not pay the blackmail demand.[11]

On December 19, 2013, following the failed blackmail attempts, the account directed a

tweet to an employee at one of Plaintiff's affiliated companies in Pennsylvania, stating, "How

does it feel working for person who was convicted of sexual assault on a minor?"[12] Plaintiff also

alleges that another post, directed to the CEO of one of Gorman's affiliated companies, called

Gorman a "child molester."[13] Defendant worked in concert with a business rival of Plaintiff's,

John Monarch, and a third person, Karl Steinborn, to defame and blackmail Plaintiff.[14]

Plaintiff originally sued Monarch, Steinborn, and performoutsider.com for defamation in

Pennsylvania state court in January 2014.[15] After Monarch removed that case to the Eastern

District of Pennsylvania, the court dismissed both Monarch and performoutsider.com as

defendants for lack of jurisdiction.[16] Monarch represented that he did not know Defendant's

actual identity or contact information in this previously-filed case.[17] In that case, Plaintiff

attempted to serve Sheptrik, who was at that time identified as Ilya Syanov, at the address used

to register the domain name for performoutsider.com, but those efforts were unsuccessful

---

[10] Compl. [Doc. No. 1] ¶¶ 26, 51–53.

[11] Compl. [Doc. No. 1] ¶ 25. The Complaint alleges that Gorman's customers received threatening emails that demanded payment in bitcoin after this. Compl. [Doc. No. 1] ¶¶ 30–31.

[12] Compl. [Doc. No. 1] ¶ 27; Pl.'s Opp'n Brief Def.'s Mot. Dismiss [Doc No. 14] at 10.

[13] Compl. [Doc. No. 1] ¶ 28.

[14] Compl. [Doc. No. 1] ¶ 82. In 2014, Plaintiff filed a motion to permit alternative service in an Eastern District of Pennsylvania case on "Ilya Synaov," and Monarch indicated that he did not know his name or contact information. Compl. [Doc. No. 1] ¶¶ 37, 39.

[15] Compl. [Doc. No. 1] ¶ 32.

[16] Compl. [Doc. No. 1] ¶¶ 42–43. This case was assigned to Judge Gerald A. McHugh. *Gorman v. Monarch*, No. 14-890 (E.D. Pa filed Feb. 11, 2014).

[17] Compl. [Doc. No. 1] ¶¶ 37, 39.

because the registration used another person's address.[18] The court entered a default judgment against Steinborn for three million dollars, finding that he was responsible for the performoutsider.com post.[19]

Thereafter, Plaintiff filed a case in South Carolina state court against Monarch, which remains ongoing.[20] Monarch for the first time revealed Defendant Ilya Shpetrik's identity and contact information in a supplemental response to an interrogatory during that litigation in 2020,[21] and Plaintiff then promptly brought this action against Shpetrik.[22]

## II.   DISCUSSION

### A.  Personal Jurisdiction

Defendant first seeks to dismiss Plaintiff's complaint for lack of personal jurisdiction. When a defendant raises lack of personal jurisdiction, the burden shifts to the plaintiff to establish "with reasonable particularity sufficient contacts between the defendant and the forum state."[23] The Court must determine whether, under the Due Process Clause, a defendant has sufficient minimum contacts with Pennsylvania "such that the maintenance of the suit does not

---

[18] Compl. [Doc. No. 1] ¶¶ 18–19, 35–37.

[19] Compl. [Doc. No. 1] ¶¶ 44–45.

[20] Compl. [Doc. No. 1] ¶¶ 46–47.

[21] Compl. [Doc. No. 1] ¶¶ 48–51.

[22] This case was reassigned to this Court from the docket of Judge J. Curtis Joyner on September 14, 2021. Sept. 14, 2021 Order [Doc. No. 17].

[23] *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (citation omitted). "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). To demonstrate personal jurisdiction, a plaintiff may rely on the allegations in the complaint, affidavits, or other evidence. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).

offend traditional notions of fair play and substantial justice."[24] Specific personal jurisdiction permits a court to exercise personal jurisdiction over a nonresident defendant for forum-related activities.[25] At this stage, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."[26]

To demonstrate that specific personal jurisdiction extends to a nonresident defendant who allegedly committed an intentional tort outside the forum state, a plaintiff must show that:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.[27]

A court only needs to consider all three factors if a plaintiff satisfies the "expressly aimed" prong of the effects test.[28] "To establish that the defendant "expressly aimed" his conduct, the plaintiff has to demonstrate the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum."[29] A plaintiff's residence in the

---

[24] *O'Connor*, 496 F.3d at 317 (internal quotation marks and citation omitted). The Pennsylvania long-arm statute "provides for jurisdiction 'based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States.'" *Id.* at 316 (citations omitted).

[25] *See id.* at 316–17. The Court will not address general personal jurisdiction as Plaintiff's Complaint does not allege that Defendant has engaged in "continuous and systematic" activities in Pennsylvania. *See id.* at 317.

[26] *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

[27] *Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001); *see Calder v. Jones*, 465 U.S. 783, 788–89 (1984).

[28] *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (citation omitted).

[29] *Id.* at 297–98 (internal quotation marks and citation omitted).

5

forum state, without more, is insufficient to satisfy this prong.[30] However, "[j]urisdiction is proper when the state of a plaintiff's residence is the focus of the activities of the defendant out of which the suit arises."[31]

Defendant argues that Plaintiff has not demonstrated sufficient contacts to establish specific personal jurisdiction because performoutsider.com was a passive website that did not actively target Pennsylvania readers, and therefore did not expressly aim conduct at the forum.[32] However, Defendant's alleged tweet about Plaintiff, a Pennsylvania resident, to an employee of Plaintiff's company, located in Philadelphia, satisfies the "expressly aimed" prong of the effects test.[33] Defendant allegedly sent defamatory material to individuals in Pennsylvania, knowing that Plaintiff would suffer harm in Pennsylvania.[34] Further, Plaintiff submitted an affidavit suggesting that Defendant deliberately targeted readers in Philadelphia.[35] As Plaintiff also alleges intentional torts and implies that Plaintiff felt the brunt of the resulting harm in Pennsylvania, Plaintiff has demonstrated that this Court may exercise specific personal jurisdiction over Defendant.[36]

---

[30] *Id.* at 299.

[31] *Id.* at 298 (internal quotation marks and citation omitted).

[32] Def.'s Mem. Supp. Mot. Dismiss [Doc. No. 13-1] at 15–16; *see Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003). Defendant relies on cases involving the operation of commercially interactive websites that concerned the nature and quality of the commercial activity conducted over the internet. *Zippo*, 952 F. Supp. at 1124. These cases are distinguishable from this case, which concerns posts on a non-commercial website.

[33] *See Goldfarb v. Kalodimos*, 539 F. Supp. 3d 435, 452–55 (E.D. Pa. 2021) (holding that the court had specific personal jurisdiction over Defendant who posted five tweets about a Pennsylvania resident and a Pennsylvania medical school).

[34] *See Goldfarb*, 539 F. Supp. 3d at 453.

[35] *See* Pl.'s Opp'n Brief Def.'s Mot. Dismiss [Doc No. 14-1] ¶¶ 42–43 (excerpting a conversation between Defendant and Monarch which suggests that Defendant intentionally attempted to direct readers in Philadelphia to performoutsider.com).

[36] Compl. [Doc. No. 1] ¶¶ 27–28, 31, 63, 67; Pl.'s Resp. Def.'s Mot. Dismiss [Doc. No. 14] at 10.

### B. Timeliness of Claims

Defendant next argues that Plaintiff's claims should be dismissed as time-barred.[37] "Federal courts sitting in diversity cases must apply the substantive laws of the states in which they sit, and statutes of limitations are considered substantive."[38] The statute of limitations for defamation is one year from the date of publication under Pennsylvania law.[39] The statute of limitations for any other tort claim based on a harmful publication, including false light and intentional infliction of emotional distress, is also one year.[40] The statute of limitations for civil conspiracy is the same as for the underlying substantive offense, which in this case is defamation.[41]

Generally, the statute of limitations for defamation claims begins to run from the date of publication.[42] However, "[u]nder the discovery rule, the statute of limitations is tolled 'where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises.'"[43] "State and federal courts in Pennsylvania, applying Pennsylvania law, have expressly rejected application of the discovery rule where a plaintiff merely lacks knowledge as to the defendant's identity."[44] Plaintiff filed the Complaint on September 28, 2020,

---

[37] Def.'s Mem. Supp. Mot. Dismiss [Doc. No. 13-1] at 16–19.

[38] *Van Burskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir. 1985).

[39] *See* 42 Pa. Cons. Stat. Ann. §5523(1).

[40] *See McClenaghan v. Turi*, 567 F. App'x 150, 156 (3d Cir. 2014). *See also Evans v. Phila. Newspapers, Inc.*, 601 A.2d 330, 333–34 (Pa. Super. Ct. 1991) ("[T]he one year statute of limitation for defamation cannot be circumvented by cloaking such a cause of action in other legal raiment.").

[41] *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974).

[42] *McClenaghan*, 567 F. App'x at 154.

[43] *Id.* at 155 (quoting *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005)).

[44] *Bradley v. Conner*, 2007 WL 4241846, at *4 (W.D. Pa. Nov. 29, 2007).

well past the one-year limitations period. It is undisputed that Plaintiff knew of his injury in 2013 when the performoutsider.com post and defamatory tweets were published, so the discovery rule is inapplicable.

The Pennsylvania Supreme Court has also recognized the related doctrine of fraudulent concealment, which "pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action."[45] This doctrine is applicable "where 'through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry.'"[46] "Where a defendant or his agent misleads the plaintiff as to the identity of the proper defendants until after the statute of limitations has expired, the proper remedy is to toll the statute of limitations."[47] When this doctrine applies, "the statute of limitations is tolled until the plaintiff knew or, using reasonable diligence, should have known of the claim in question."[48]

Defendant allegedly misled Plaintiff by providing false contact information when registering the domain name for performoutsider.com. As Plaintiff argues that Defendant concealed his identity from Plaintiff until ongoing litigation revealed Defendant's true name and contact information in 2020, discovery is needed to evaluate whether Plaintiff exercised the due

---

[45] *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 247 (Pa. 2021) (quoting *Dubose v. Quinlan*, 173 A.3d 634, 644 (2017) (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014) (citation omitted))).

[46] *Bynum v. Trustees Univ. Pa.*, 115 F.Supp.3d 577, 586 (E.D. Pa. 2015) (quoting *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir.1985)).

[47] *Lange v. Burd*, 800 A.2d 336, 339 (Pa. Super Ct. 2002) (citing *Hubert v. Greenwald*, 743 A.2d 977, 981 (Pa. Super. Ct. 1999)).

[48] *Bynum*, 115 F. Supp. 3d at 586 (citing *Bohus v. Beloff*, 950 F.2d 919, 925–26 (3d Cir. 1991)).

diligence necessary to allow for equitable tolling under the theory of fraudulent concealment. Defendant's motion will be denied on this ground.

### C.  Failure to State a Claim

Defendant also moves under Federal Rule of Civil Procedure 12(b)(b) to dismiss the complaint for failure to state a claim upon which relief may be granted. "When considering a motion to dismiss . . . a court must accept as true all material allegations, read the complaint in the light most favorable to the plaintiff, and decide whether, under any reasonable understanding of the complaint, the plaintiff may be entitled to relief."[49] The court may consider documents appended to, or otherwise integral to, the complaint.[50] "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[51] A complaint meets this requirement if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[52]

#### 1.  Defamation

Under Pennsylvania law, which the parties agree applies to this diversity action, a plaintiff must plead each of the following elements to state a defamation claim:

(1) The defamatory character of the communication.
(2) Its publication by the defendant.
(3) Its application to the plaintiff.
(4) The understanding by the recipient of its defamatory meaning.
(5) The understanding by the recipient of it as intended to be applied to the plaintiff.
(6) Special harm resulting to the plaintiff from its publication.

---

[49] *Obado v. Magedson*, 612 F. App'x 90, 93 (3d Cir. 2015) (citation omitted).

[50] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d. Cir. 1997); *see Vorchheimer v. Phila. Owners Ass'n*, 903 F.3d 100, 111 (3d Cir. 2018) (stating that exhibits to the complaint may be considered to assess a motion to dismiss).

[51] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)).

[52] *Id.* (citation omitted).

(7) Abuse of a conditionally privileged occasion.[53]

If a defendant's statements "impute[] a criminal offense, loathsome disease, business misconduct, or serious sexual misconduct, the statement constitutes defamation *per se* and proof of 'special' damages is not required."[54]

The question of whether a statement is defamatory "is a 'threshold issue' to be determined by the court."[55] "The plaintiff bears the burden of making this showing."[56] Communications are defamatory "[w]hen [they] tend to lower a person in the estimation of the community, deter third persons from associating with him, or adversely affect his fitness for the proper conduct of his lawful business or profession."[57] "It is not enough that the victim of the [statements] . . . be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society."[58] A statement "must be construed as a whole, and each word must be read in the context of all the other words."[59] The Pennsylvania Supreme Court has stated:

> [W]ords which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable. Thus, we must consider the full context of the article to determine the effect the article is fairly calculated to produce, the impression it would

---

[53] 42 Pa. Cons. Stat. Ann. § 8343(a).

[54] *Rose v. Dowd*, 265 F. Supp. 3d 525, 531 (E.D. Pa. 2017) (first citing *Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336, 343 (3d Cir. 2005); and then citing *Clemente v. Espinosa*, 749 F. Supp. 672, 677 (E.D. Pa. 1990)).

[55] *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Kurowski v. Burroughs*, 994 A.2d 611, 617 (Pa. Super. Ct. 2010)).

[56] *Id.*

[57] *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (Pa. Super. Ct. 2008) (citation omitted).

[58] *Tucker v. Phila. Daily News*, 848 A.2d 113, 124 (Pa. 2004) (quoting *Scott-Taylor, Inc. v. Stokes*, 229 A.2d 733, 734 (Pa. 1967)).

[59] *Kurowski*, 994 A.2d at 617 (citations omitted).

naturally engender, in the minds of the average persons among whom it is intended to circulate.[60]

"[O]nly statements of fact, rather than mere expressions of opinion, are actionable under Pennsylvania law."[61]

Plaintiff alleges that Defendant published two defamatory statements using the @performoutsider Twitter account: (1) a message to Plaintiff's employee: "How does it feel working for person who was convicted of sexual assault on a minor?" and (2) a post directed to the CEO of a company with which Plaintiff was affiliated, calling him a "child molester."[62] Defendant does not dispute that falsely accusing a person of being a child molester is defamatory, but argues that Plaintiff has not plausibly alleged that Defendant operated the Twitter account, and has thereby failed to satisfy the "publication by Defendant" element.[63]

As the Court accepts Plaintiff's allegation that Defendant operated the @performoutsider Twitter account as true at this stage, it is plausible that the same person who operated the website also operated a Twitter account by the same name. Plaintiff further alleges that the Twitter account and the website published similar allegations against Plaintiff within a short time span, supporting the inference that the identically named Twitter account and website were acting in

---

[60] *Tucker*, 848 A.2d at 124 (quoting *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 216 (Pa. 1981)).

[61] *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010) (citing *Moore v. Cobb-Nettleton*, 889 A.2d 1262, 1267 (Pa. Super. Ct. 2005)). An opinion can "be deemed capable of defamatory meaning under Pennsylvania law . . . [if] 'reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion.'" *Id.* (citing *Remick*, 238 F.3d at 261 (internal citation omitted)).

[62] Pl.'s Compl. [Doc. No. 1] ¶¶ 26–28.

[63] Def.'s Mem. Supp. Mot. Dismiss [Doc. No. 13-1] at 22. Defendant takes issue with the fact that Plaintiff did not attach the alleged Twitter posts to the Complaint but provides no support for its argument that this is problematic. Def.'s Mem. Supp. Mot. Dismiss [Doc. No. 13-1] at 22–23.

concert.[64] Therefore, Plaintiff has stated a claim for defamation against Defendant with respect to these posts.[65] Defendant's motion to dismiss the defamation claim will be denied.

### 2. Intentional Infliction of Emotional Distress

Defendant next contends that Plaintiff has failed to state a claim for intentional infliction of emotional distress.[66] There are four elements of this tort under Pennsylvania law.[67] First, "the conduct must be extreme and outrageous."[68] Conduct meets the requisite level when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."[69] Second, "the conduct must be intentional or reckless." Third, "it must cause emotional distress." Fourth, "the distress must be severe."[70] A plaintiff must also allege that he has experienced a physical injury connected to the emotional distress.[71] As Plaintiff does not allege that he has suffered a specific concrete physical injury related to Defendant's alleged conduct, this claim will be dismissed without prejudice.

---

[64] See Pl.'s Compl. [Doc. No. 1] ¶¶ 11–12, 26–27.

[65] Defendant also argues that the post on performoutsider.com is not capable of defamatory meaning because (1) when read in context, the republished news article does not defame Plaintiff; and (2) mere republication of an article or reference to an allegedly defamatory website does not satisfy the "publication" element. Def.'s Mem. Supp. Mot. Dismiss [Doc. No. 13-1] at 20–22. At this stage, it is premature to determine as a matter of law whether the language in the post constitutes a republication or that it is uncapable of defamatory meaning.

[66] Def.'s Mem. Supp. Mot. Dismiss [Doc. No. 13-1] at 24–25.

[67] Miller v. Comcast, 724 F. App'x 181, 182 (3d Cir. 2018) (quoting Bruffett v. Warner Commc'ns, Inc., 692 F.2d 910, 914 (3d Cir. 1982)).

[68] Id. (citation omitted).

[69] Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998) (quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. 1987)).

[70] Miller, 724 F. App'x at 182 (citation omitted).

[71] Rolla v. Westmoreland Health Sys., 651 A.2d 160, 163 (Pa. Super. Ct. 1994) ("[I]t is clear that . . . in order to state a claim under which relief can be granted for the tort of intentional infliction of emotional distress, the plaintiffs must allege physical injury.") (citation and emphasis omitted).

12

### 3.  *False Light*

Defendant next contends that Plaintiff has failed to state a false light claim. "[U]nder Pennsylvania law, a plaintiff must show that a defendant publicized a highly offensive statement with knowledge or in reckless disregard of its falsity."[72] This tort "offers redress not merely for the publication of matters that are provably false, but also for those that, although true, are selectively publicized in a manner creating a false impression."[73] To find a cause of action for false light, there must be "a major misrepresentation of a person's character, history, activities or beliefs . . . that could reasonably be expected to cause a reasonable man to take serious offense."[74]

For the same reasons that the defamation claims will proceed, the motion to dismiss this claim will be denied as the published information "could reasonably be expected to cause a reasonable man to take serious offense."[75]

### 4.  *Civil Conspiracy*

Lastly, Defendant contends that Plaintiff has failed to state a claim for civil conspiracy.[76] Under Pennsylvania law, a civil conspiracy claim "must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor."[77] To prevail, a plaintiff must show: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful

---

[72] *Kane v. Chester Cnty.*, 811 F. App'x 65, 72 (3d Cir. 2020) (citations omitted).

[73] *Id.* (quoting *Krajewski v. Gusoff*, 53 A.3d 793, 806 (Pa. Super. Ct. 2012).

[74] *Rush v. Phila. Newspapers, Inc.*, 732 A.2d 648, 654 (Pa. Super. Ct. 1999).

[75] *Id.*

[76] Def.'s Mem. Supp. Mot. Dismiss [Doc. No. 13-1] at 25.

[77] *Levin v. Upper Makefield Twp.*, 90 F. App'x. 653, 667 (3d Cir. 2004) (citation omitted).

13

purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage."[78] It is also necessary to demonstrate that alleged conspirators acted with malice, or intent to injure the plaintiff.[79] "This necessary proposition is negated by a showing that the acts alleged were done for professional or business benefit."[80]

Defendant argues that Plaintiff's claim of civil conspiracy fails because he no longer alleges a conspiracy involving two or more defendants.[81] Plaintiff's Complaint alleges that Defendant's parents and brother, who Plaintiff voluntarily dismissed from this case, conspired with Plaintiff.[82] Plaintiff contends that the Complaint also alleges a civil conspiracy involving Defendant, Monarch, Steinborn, and others to work with the common purpose of defaming Plaintiff, placing him in a false light, and causing him severe emotional distress.[83] The Complaint avers that "Defendants committed acts in furtherance of this combination and conspiracy," referring to a conspiracy involving Sheptrik's family members and unspecified individuals, by working with Monarch and Steinborn to spread false information about Plaintiff.[84] However, the Complaint only mentions Monarch and Steinborn in reference to acts that members of the conspiracy took to further the conspiracy's common purpose. It does not

---

[78] *Id.* (citation omitted).

[79] *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987–88 (Pa. Super. Ct. 1997). It must be shown "that the *sole* purpose of the conspiracy was to injure the [p]laintiffs." *Morilus v. Countrywide Home Loans, Inc.*, 651 F. Supp. 2d 292, 313 (E.D. Pa. 2008) (internal quotation marks and citations omitted).

[80] *Bro-Tech Corp. v. Thermax, Inc.,* 651 F. Supp. 2d 378, 419 (E.D. Pa. 2009).

[81] Def.'s Mem. Supp. Mot. Dismiss [Doc. No. 13-1] at 26.

[82] Pl.'s Compl. [Doc. No. 1] ¶¶ 80–82; Not. Voluntary Dismissal [Doc. No. 7].

[83] Pl.'s Compl. [Doc. No. 1] ¶¶ 53, 81–82.

[84] Pl.'s Compl. [Doc. No. 1] ¶ 82.

allege that Monarch and Steinborn shared this common purpose. Therefore, this claim will be dismissed without prejudice.

**III.   CONCLUSION**

For the reasons stated above, Shpetrik's motion to dismiss will be granted in part and denied in part. The Complaint sufficiently pleads that this Court may exercise specific personal jurisdiction over Defendant. Discovery is needed to determine whether the doctrine of fraudulent concealment may toll the statute of limitations for Plaintiff's claims. Plaintiff may proceed with his defamation and false light claims, and his intentional infliction of emotion distress and civil conspiracy claims will be dismissed. An appropriate order will be entered.